1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MARK R. BECKINGTON, State Bar No. 126009
   Supervising Deputy Attorney General
3  SEBASTIAN BRADY, State Bar No. 330904
   KRISTI A. HUGHES, State Bar No. 235943
4  Deputy Attorneys General
     600 West Broadway, Suite 1800
5    San Diego, CA 92101
     Telephone: (619) 321-5428
6    Fax: (916) 732-7920
     E-mail: Kristi.Hughes@doj.ca.gov
7  *Attorneys for Defendants*

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13  **WESTERN GROWERS ASSOCIATION**          1:25-cv-00577-JLT-BAM
    **and OLIVE HILL GREENHOUSES, INC.,**
14
                              Plaintiffs,
15                                             **DEFENDANTS' OPPOSITION TO**
           v.                                  **PLAINTIFFS' MOTION FOR A**
16                                             **PRELIMINARY INJUNCTION (ECF No.**
                                               **13)**
17  **AGRICULTURAL LABOR RELATIONS**
    **BOARD; VICTORIA HASSID in her**          Hearing Date: TBD
18  **official capacity as Chairperson of the**  Time: TBD
    **California Agricultural Labor Relations**  Courtroom:
19  **Board; ISADORE HALL III, BARRY**         Judge: Hon. Jennifer L. Thurston
    **BROAD, RALPH LIGHTSTONE, and**           Trial Date:    Not set
20  **CINTHIA N. FLORES, in their official**   Complaint Filed:    April 4, 2025
    **capacities as Members of the California**
21  **Agricultural Labor Relations Board;**
    **SANTIAGO AVILA-GOMEZ, in his official**
22  **capacity as Executive Secretary of the**
    **California Agricultural Labor Relations**
23  **Board,**

24                              Defendants.

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................... 1

Background ................................................................................................................ 2

    I.     Statutory Framework ................................................................................... 2

    II.    Procedural Background................................................................................ 5

Preliminary Injunction Standard............................................................................... 6

Argument ................................................................................................................... 6

    I.     Plaintiffs' claims are not justiciable. ......................................................... 6

        A.    Constitutional ripeness is not satisfied....................................... 6

        B.    Plaintiffs' claims are also not prudentially ripe.......................... 8

    II.    Plaintiffs are not likely to succeed on the merits...................................... 9

        A.    MMC does not impermissibly delegate state authority to private parties. ........................................................................................ 9

        B.    The MMC process does not violate due process. ..................... 12

            1.    Plaintiffs' liberty-of-contract claim has no legal basis. ............... 12

            2.    Olive Hill and other employers do not have a free-standing right to a reasonable return on their business............................... 15

            3.    The MMC mediator's role does not violate due process. ............. 16

            4.    MMC's cost-sharing provision satisfies due process. ................. 17

        C.    The MMC process does not violate equal protection............................ 18

    III.   Plaintiffs have not demonstrated any irreparable harm. ....................... 21

    IV.   The balance of equities and public interest strongly disfavor a preliminary injunction. .............................................................................................. 21

Conclusion............................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adkins v. Children's Hospital*
261 U.S. 525 (1923)..................................................................................... 13

*All. for the Wild Rockies v. Cottrell*
632 F.3d 1127 (9th Cir. 2011) ...................................................................... 6

*Angelotti Chiropractic, Inc. v. Baker*
791 F.3d 1075 (9th Cir. 2015) .................................................................... 18

*Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*
10 F.4th 937 (9th Cir. 2021)......................................................................... 9

*Assurance Wireless USA, L.P. v. Reynolds*
100 F.4th 1024 (9th Cir. 2024) ................................................................. 6, 9

*Axon Enterprise, Inc. v. FTC*
598 U.S. 175 (2023)...................................................................................... 8

*Bayscene Resident Negotiators v. Bayscene Mobilehome Park*
15 Cal. App. 4th 119 (1993)....................................................................... 15

*Birkenfield v. City of Berkeley*
17 Cal. 3d 129, 159 (1976)......................................................................... 15

*Boddie v. Connecticut*
401 U.S. 371 (1971).................................................................................... 17

*Bova v. City of Medford*
564 F.3d 1093 (9th Cir. 2009) ................................................................. 6, 7

*Burstein v. Nonte*
688 F. Supp. 3d 314 (E.D. Va. 2023) ........................................................ 13

*Cal. Tchrs. Ass'n v. California*
20 Cal. 4th 327 (1999) ............................................................................... 17

*Calvary Chapel Bible Fellowship v. Cnty. of Riverside*
948 F.3d 1172 (9th Cir. 2020) .................................................................... 17

*Carter v. Carter Coal Co.*
298 U.S. 238 (1936).................................................................................... 11

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3
4
*Charles Wolff Packing Co. v. Court of Industrial Relations of State of Kansas*
    (*Wolff I*)
    262 U.S. 522 (1923)..................................................................................... 13, 14

5
6
*Charles Wolff Packing Co. v. Ct. of Indus. Rels. of Kansas* (*Wolff II*)
    267 U.S. 552 (1925)..................................................................................... 13, 14

7
8
*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013).............................................................................................7

9
*Country-Wide Ins. Co. v. Harnett*
    426 F. Supp. 1030 (S.D.N.Y.) .......................................................................... 13

10
11
*Cromwell Assocs. v. Mayor & Council of City of Newark*
    511 A.2d 1273 (N.J. Super. Ct. Law Div. 1985) ............................................. 15

12
13
*Dandridge v. Williams*
    397 U.S. 471 (1970)......................................................................................... 18

14
*Dorchy v. Kansas*
    264 U.S. 286 (1924)......................................................................................... 14

15
16
*Drakes Bay Oyster Co. v. Jewell*
    747 F.3d 1073 (9th Cir. 2014) ...................................................................... 6, 21

17
18
*Duquesne Light Co. v. Barasch*
    488 U.S. 299 (1989)......................................................................................... 15

19
*Engquist v. Ore. Dep't of Agric.*
    553 U.S. 591 (2008)..................................................................................... 19, 20

20
21
*Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*
    880 F.3d 450 (9th Cir. 2018) .......................................................................... 18

22
23
*Eubank v. City of Richmond*
    226 U.S. 137 (1912)......................................................................................... 11

24
*Fed. Power Comm'n v. Hope Nat. Gas Co.*
    320 U.S. 591 (1944)......................................................................................... 15

25
26
*Ferguson v. Skrupa*
    372 U.S. 726 (1963)......................................................................................... 12

27
28
*Ft. Smith Light & Traction Co. v. Bd. of Improvement of Paving Dist. No. 16*
    274 U.S. 387 (1927)......................................................................................... 19

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Fyock v. City of Sunnyvale*
25 F. Supp. 3d 1267 (N.D. Cal. 2014) ............................................................................. 21

*Garcia v. Google, Inc.*
786 F.3d 733 (9th Cir. 2015) ............................................................................................ 6

*Gerawan Farming, Inc. v. ALRB*
3 Cal. 5th 1118 (2017) ............................................................................................. *passim*

*Hawaii Hous. Auth. v. Midkiff*
467 U.S. 229 (1984) ......................................................................................................... 10

*Hess Collection Winery v. ALRB*
140 Cal. App. 4th 1584 (2006) ................................................................................ *passim*

*Indep. Training & Apprenticeship Program v. California Dep't of Indus. Rels.*
730 F.3d 1024 (9th Cir. 2013) ......................................................................................... 12

*Maryland v. King*
567 U.S. 1301 (2012) (Roberts, C.J., in chambers) ....................................................... 21

*Miller v. Schoene*
276 U.S. 272, 277-78 (1928) ........................................................................................... 10

*Mount St. Mary's Hosp. of Niagara Falls v. Catherwood*
26 N.Y.2d 493 (1970) ...................................................................................................... 13

*Planned Parenthood Great Nw. v. Labrador*
122 F.4th 825 (9th Cir. 2024) ............................................................................................ 6

*Rhoades v. Reinke*
671 F.3d 856 (9th Cir. 2011) (per curiam) ...................................................................... 18

*Rice v. Vill. of Johnstown*
30 F.4th 584 (6th Cir. 2022) ........................................................................................... 11

*Richardson v. City & Cnty. of Honolulu*
759 F. Supp. 1477 (D. Haw. 1991) ................................................................................. 15

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*
490 U.S. 477 (1989) ......................................................................................................... 14

*Rodriguez Diaz v. Garland*
53 F.4th 1189 (9th Cir. 2022) ......................................................................................... 17

iv

# TABLE OF AUTHORITIES
### (continued)

**Page**

*S. California Healthcare Sys., Inc. v. City of Culver City*
    2022 WL 1394751 (C.D. Cal. Jan. 19, 2022) ....................................... 16

*SmileDirectClub, LLC v. Tippins*
    31 F.4th 1110 (9th Cir. 2022) ............................................................. 20

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*
    108 F.4th 1128 (9th Cir. 2024) ......................................................... 6, 8

*Stormans, Inc. v. Selecky*
    586 F.3d 1109 (9th Cir. 2009) ............................................................. 9

*Thomas v. Cnty. of Humboldt*
    124 F.4th 1179 (9th Cir. 2024) ......................................................... 6, 7

*Tucson Woman's Clinic v. Eden*
    379 F.3d 531 (9th Cir. 2004) ............................................................. 11

*United States v. Navarro*
    800 F.3d 1104 (9th Cir. 2015) ........................................................... 18

*Washington ex rel. Seattle Title Trust Co. v. Roberge*
    278 U.S. 116 (1928) .......................................................................... 11

*Washington State Grange v. Washington State Republican Party*
    552 U.S. 442 (2008) ..................................................................... 14, 17

*West Coast Hotel Co. v. Parrish*
    300 U.S. 379 ..................................................................................... 13

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*
    32 F.4th 852 (9th Cir. 2022) ............................................................... 6

*Withrow v. Larkin*
    421 U.S. 35 (1975) ............................................................................ 17

*Young v. City of Simi Valley*
    216 F.3d 807 (9th Cir. 2000) ............................................................. 11

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

California Labor Code

§ 1140 *et seq.*................................................................................. 2
§ 1164................................................................................................ 11
§ 1164(a)..................................................................................... 2, 10
§ 1164(b)..............................................................................3, 11, 19
§ 1164(b)–(c)........................................................................................ 3
§ 1164(d).......................................................................3, 5, 11, 16
§ 1164(e).................................................................................. 3, 20
§ 1164(e)(2)............................................................................. 16, 20
§ 1164(e)(3)......................................................................................... 12
§ 1164.3..................................................................................... 3, 4, 10
§ 1164.3(a).......................................................................................... 12
§ 1164.3(a)–(c)..................................................................................... 7
§ 1164.3(a)(1)-(3).............................................................................. 4
§ 1164.3(b).......................................................................................... 4
§ 1164.3(d).......................................................................................... 4
§ 1164.3(e)......................................................................................... 12
§ 1164.5............................................................................................. 10
§ 1164.5(a).......................................................................................... 4
§ 1164.5(b).......................................................................................... 4
§ 1164.5(d)..................................................................................... 4, 7
§ 1164.13........................................................................................... 18

**REGULATIONS**

California Code of Regulations Title 8

§ 20400............................................................................................ 11
§ 20401.............................................................................................. 2
§ 20401(a)......................................................................................... 19
§ 20402........................................................................................ 2, 19
§ 20407............................................................................................. 17
§ 20407(a)–(d)..................................................................................... 3
§ 20407(a)(2)............................................................................. 10, 16
§ 20407(e)............................................................................................ 3
§ 20408(b)..................................................................................... 4, 10

**INTRODUCTION**

In this suit, Plaintiffs Western Growers Association ("WGA") and Olive Hill Greenhouses, Inc. raise due process and equal protection challenges to California's statutory dispute resolution process, Mandatory Mediation and Conciliation ("MMC"), which addresses one aspect of the collective bargaining process in the agricultural industry. Olive Hill is currently engaged in the MMC process with its employees' certified bargaining representative, United Farm Workers of America ("UFW"), but the process remains ongoing; the Agricultural Labor Relations Board ("Board") has not imposed any final labor contract.

Although Olive Hill is not subject to any final MMC order nor has a collective bargaining agreement ("CBA") been imposed on Olive Hill (and, indeed, may never be), Plaintiffs seek a preliminary injunction of the MMC process. For a host of reasons, Plaintiffs are not entitled to the extraordinary remedy of a preliminary injunction against a validly enacted state law that the California Supreme Court has already found constitutional.

First, Plaintiffs' claims are not ripe, as the MMC process is ongoing and the outcome speculative; Olive Hill currently cannot claim any cognizable injury. Second, Plaintiffs cannot show a likelihood of success on the merits; their claims don't establish any constitutional violation. Indeed, the California Supreme Court has already explained why most of Plaintiffs' due process and equal protection claims fail, *see Gerawan Farming, Inc. v. ALRB*, 3 Cal. 5th 1118 (2017), *cert. denied* 586 U.S. 908 (2018), and there is no reason to second-guess *Gerawan*'s holding.

Beyond that, the equities and the public interest strongly disfavor injunctive relief here. The MMC process furthers labor peace and protects collective bargaining rights in the agricultural industry, which is vital to the state's economy. Plaintiffs are not suffering any injury or irreparable harm and have provided absolutely no evidence of any harm. This is not a close case, and Plaintiffs are not entitled to injunctive relief.

# BACKGROUND

## I.    STATUTORY FRAMEWORK

Fifty years ago, the California Legislature enacted the Agricultural Labor Relations Act ("ALRA") of 1975 to recognize and protect the collective bargaining rights of agricultural workers.[1] *See* 1975 Cal. Stats. 4013, *codified at* Cal. Lab. Code § 1140 *et seq*.[2] It "established an elaborate framework governing the right of agricultural workers to organize themselves into unions to engage in collective bargaining with their employers[,]" while also creating the Board to administer the conduct of union elections and address unfair labor practices. *Gerawan*, 3 Cal. 5th at 1129-30.

But it soon "became clear that the ALRA had not resulted in the widespread adoption of collective bargaining agreements between agricultural employers and employees." *Id.* at 1132 (observing that in 2002, "agricultural employers had not agreed to a contract in about 60 percent of the cases where a labor union had been certified"). In response, the Legislature amended the ALRA to include MMC, a form of interest arbitration "in which the terms and conditions of employment are established by a final and binding decision of an arbitrator." *Id.* at 1132-33. In enacting the MMC statute, "[t]he Legislature determined there was 'a need . . . for a mediation procedure in order to ensure a more effective collective bargaining process between agricultural employers and agricultural employees, and thereby more fully attain the purposes of the [ALRA.]'" *Id.* at 1132 (quoting 2002 Cal. Stats. 7401).

If the agricultural employer and the certified union have not reached an agreement within 90 days after either party has made an initial request to bargain, either party may request the assistance of a mediator, through the MMC process. § 1164(a). The other side may file an answer contesting whether the criteria for MMC are met. Cal. Code Regs. tit. 8, § 20401. The Board then assesses whether the relevant criteria are met, including by holding an evidentiary hearing if necessary. Cal. Code Regs. tit. 8, § 20402. Since 2012, the Board has found the criteria met in

---

[1] Agricultural workers were and are expressly excluded from the protections of the National Labor Relations Act. *See* 29 U.S.C. § 152(3).

[2] Unless otherwise indicated, all statutory citations are to the California Labor Code, all emphasis is added, and internal quotation marks are omitted.

2

nine of thirteen MMC requests it has received. *See* Decl. of Santiago Avila-Gomez in Support of Defs.' Opp'n to Plf.'s Mot. for Prelim. Injun. ("Avila-Gomez Decl."), ¶ 11. If the Board determines the relevant criteria are met, it "direct[s] the parties to mandatory mediation and conciliation of their issues." § 1164(b). The parties then select a mediator, who will conduct a mediation with the parties for an initial 30 days, with the option to extend for an additional 30 days. § 1164(b)–(c).

Ideally, the parties reach an agreement through mediation, thereby ending the MMC process and the Board's involvement in their negotiations. *See* Cal. Code Regs. tit. 8, § 20407(e). And in practice, MMC proceedings often resolve without further Board involvement: a third of MMC proceedings have resolved without any final order by the Board. Avila-Gomez Decl. ¶ 11. If, however, the parties are unable to resolve all their differences, the mediator issues a report that "resolves" all remaining issues "and establishes the final terms of a collective bargaining agreement." § 1164(d); Cal. Code Regs. tit. 8, § 20407(a)–(d). The mediator's report must "include the basis for the mediator's determination" of any disputed issues and "be supported by the record." § 1164(d).

The ALRA guides the mediator's determination, directing the mediator to consider certain specified criteria "commonly considered in similar proceedings," including: (1) the "stipulations of the parties[,]" (2) the "financial condition of the employer[,]" (3) the terms of collective bargaining agreements "covering similar agricultural operations[,]" (4) wages, benefits, terms, and conditions of employment "in comparable firms or industries in geographical areas with similar economic conditions," and (5) "[t]he average consumer prices for goods and services according to the California Consumer Price Index, and the overall cost of living, in the area where the work is performed." § 1164(e); *see Hess Collection Winery v. ALRB*, 140 Cal. App. 4th 1584, 1607 (2006) (mediator must consider these factors).

Although Plaintiffs obscure the point, Plf.'s Mot. for Prelim. Injun. ("Mot.") at 4, this report does not have immediate effect; it must be ordered into effect by the Board itself. *See* § 1164.3. If either party is unsatisfied with the report, it may seek Board review of the mediator's

3

1  determination. *Id.* During this review, the challenged portions of the report are not ordered into

2  effect. *Id.*[3]

3    In its review, the Board determines whether any portion of the report is (1) unrelated to

4  wages, hours, or other conditions of employment, (2) based on clearly erroneous findings of

5  material fact, or (3) arbitrary and capricious in light of the mediator's findings of fact.

6  § 1164.3(a)(1)-(3), (c). In making this determination, the Board may hold an evidentiary hearing.

7  Cal. Code Regs. tit. 8, § 20408(b). Where it determines a party's challenge is correct, the Board

8  must direct the mediator to modify the offending terms and issue a second report. This second

9  report becomes the Board's final order if neither party objects, *see* § 1164.3(d), or, if a party

10  objects, is subject to further Board review before being ordered into effect. *Id.* This can be a

11  lengthy process: the average time between MMC request and final Board order is 287 days, and

12  the longest time from MMC request to final Board order took 799 days. Avila-Gomez Decl. ¶ 12.

13    If either party is still dissatisfied after Board review, it may pursue yet another level of

14  review, in either the California Court of Appeal or the California Supreme Court. § 1164.5(a).

15  The reviewing court examines the entire record to determine whether, among other grounds for

16  vacatur, "[t]he board acted without, or in excess of, its powers or jurisdiction[,]" or "[t]he order or

17  decision of the board violates any right of the petitioner" under the United States or California

18  Constitutions. § 1164.5(b).[4] The petitioning party can seek and obtain a stay of the MMC order

19  while its petition is pending if it posts the necessary bond. §§ 1164.5(d); 1164.3(f)(3).

20    Since its enactment, the MMC statute has faced several challenges. But California courts

21  have continually upheld the statute against constitutional attack. Almost twenty years ago, the

22  California Court of Appeal rejected a claim that the MMC process violated a substantive due

23  process right to "freedom of contract," explaining that the *Lochner*-era "substantive due process

24  line of authority" Plaintiffs relied upon "has been completely repudiated." *See Hess Collection*

25  _____

26  [3] Alternatively, if the parties accept the mediator's report as a reasonable determination of disputed issues and decline the option to seek Board review, "then the mediator's report shall become a final order of the [B]oard," giving it legal effect. § 1164.3(b).

27  [4] Plaintiffs' characterization of this review as "discretionary" is inaccurate. *See* Mot. at 16 n.15. Although the reviewing court has discretion over whether to summarily deny the writ

28  petition or to set the matter for a hearing, the petition is always resolved.

1   *Winery*, 140 Cal. App. 4th at 1598–1601. The court also held that MMC does not violate equal

2   protection since the various statutory factors guiding the mediator's consideration "reasonably

3   ensure that contracts of different employers will be similar." *Id.* at 1603-04.

4      More recently, the California Supreme Court similarly rejected a set of constitutional

5   challenges to the MMC process. *See Gerawan*, 3 Cal. 5th at 1129. It held that the employer's

6   substantive due process argument theory had been "completely repudiated." *Id.* at 1139. And it

7   rejected an equal protection claim, holding that MMC's "individualized determinations are

8   rationally related to the Legislature's legitimate interest in ensuring that collective bargaining

9   agreements[ are tailored to the unique circumstances of each employer[,]" and that the statutory

10  factors guiding the mediator "further the MMC's purposes while minimizing arbitrary or

11  irrational differences between the collective bargaining agreements imposed by the MMC process

12  on similarly situated agricultural employers." *Id.* at 1144–45.

13  **II.    PROCEDURAL BACKGROUND**

14     Plaintiffs brought this challenge to the MMC process after UFW was certified as the

15  bargaining representative for Olive Hill's farmworkers in January 2024. *See* Compl. ¶ 19. Shortly

16  thereafter, the UFW requested that Olive Hill negotiate the terms of a CBA. *See id.*, Ex. 1.

17     The parties negotiated over the next several months but failed to reach an agreement. *See*

18  *id.*, Ex. 2. In November 2024, the UFW filed with the Board a request for referral to MMC. *See*

19  *id*. Olive Hill responded that the UFW was at fault for the failure to reach a CBA and the Board

20  should deny the request. *See id.* While the Board noted Olive Hill's position, it ultimately found

21  in a written order that UFW had met the statutory requirements for referral to MMC and directed

22  the parties to MMC on November 22, 2024. *See id.*

23     Currently, the parties are still engaged in the MMC process, with the second mediation

24  session scheduled for May 22, 2025. *See* Compl. ¶ 50. When MMC eventually concludes—either

25  because the parties resolve the issues to their mutual satisfaction or because the parties fail to

26  reach an agreement—the mediator will file a report with the Board establishing the terms of the

27  CBA, which will then be subject to challenges before it takes effect. § 1164(d).

28

1

**PRELIMINARY INJUNCTION STANDARD**

2      Preliminary injunctions are "an 'extraordinary remedy never awarded as of right.'" *Garcia*

3  *v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Winter v. Nat'l Res. Def. Council*, 555

4  U.S. 7, 24 (2008)). Plaintiffs must establish that (1) they are "likely to succeed on the merits," (2)

5  "likely to suffer irreparable harm absent preliminary relief," (3) "the balance of equities tips in

6  their favor," and (4) "an injunction is in the public interest." *Where Do We Go Berkeley v. Cal.*

7  *Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). "When the government is a party, these last

8  two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

9      The first factor—likelihood of success on the merits—is "the most important," *Garcia*, 786

10 F.3d at 740, though a plaintiff must make a showing on all four factors to obtain relief. *All. for the*

11 *Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011). Where a plaintiff "has failed to

12 show the likelihood of success on the merits," the Court "need not consider the remaining three"

13 factors, *id.*, and a "merely plausible claim" is insufficient to meet that threshold inquiry.

14 *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024).

15

**ARGUMENT**

16 **I.    PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE.**

17      "Article III . . . requires that a plaintiff's claim be ripe for adjudication." *Stavrianoudakis v.*

18 *U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1138 (9th Cir. 2024). "[A] claim is not ripe for

19 adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed

20 may not occur at all." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (quoting

21 *Texas v. United States,* 523 U.S. 296, 300 (1998)). "There are two ripeness considerations:

22 constitutional and prudential." *Stavrianoudakis*, 108 F.4th at 1139. Neither is satisfied here.

23      **A.    Constitutional ripeness is not satisfied.**

24      "For a suit to be ripe within the meaning of Article III, it must present concrete legal issues,

25 presented in actual cases, not abstractions." *Planned Parenthood Great Nw. v. Labrador*, 122

26 F.4th 825, 839 (9th Cir. 2024). This aspect of ripeness "is designed to separate matters that are

27 premature for review because the injury is speculative and may never occur from those cases that

28 are appropriate for federal court action." *Thomas v. Cnty. of Humboldt*, 124 F.4th 1179, 1187 (9th

1    Cir. 2024).  Here, the bulk of Plaintiffs' claims—their substantive due process challenge, their

2    reasonable rate of return challenge, their mediator/adjudicator combination challenge, and their

3    equal protection class-of-one challenge—are not constitutionally ripe because they focus solely

4    on potential future injury from the imposition of a CBA.

5        But as Plaintiffs acknowledge, the MMC process is ongoing. *See* Compl. ¶ 50. And

6    Plaintiffs concede Olive Hill is not subject to a CBA until mediation is exhausted and the

7    mediator files his report with the Board. *See* Mot. at 4. Indeed, it is not even certain whether the

8    mediator will file a report with the Board: the Board often does not receive a mediator report after

9    referring parties to MMC because the parties often resolve their disagreements and withdraw from

10   MMC without the need for the MMC process to run its course. *See* Avila-Gomez Decl. ¶ 11. In

11   fact, rather than declare mediation exhausted, the parties' mediator has already extended the

12   mediation period beyond in the initial 30-day statutory period to allow for additional time to

13   negotiate. *See* Compl. ¶¶ 49-51.

14       Even if an MMC report is ultimately submitted, it is still speculative that Olive Hill will be

15   subject to a final MMC order. The parties may seek review from the Board, which automatically

16   stays the effect of the challenged provisions of the mediator's report. The Board, of course,

17   retains the ability to reject the report on various grounds, such as where "a provision of the

18   collective bargaining agreement set forth in the mediator's report is arbitrary or capricious in light

19   of the mediator's findings of fact." § 1164.3(a)–(c). And even if the Board accepts a mediator's

20   report and issues a final MMC order, a party may seek judicial review and obtain a stay of that

21   order pending review. §§ 1164.5(d); 1164.3(f)(3). Any final MMC order is thus a "contingent

22   future event[] that may not occur as anticipated, or indeed may not occur at all." *Bova*, 564 F.3d

23   at 1096. These claims are merely "conjectural or hypothetical," *Thomas*, 124 F.4th at 1187, and

24   premature because several steps in the process remain before any CBA is imposed—if at all. *See*

25   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (noting that "allegations of *possible*

26   future injury are not sufficient" and any threatened injury must be "*certainly impending*").

27       Perhaps because the only non-hypothetical occurrence thus far has been the referral to

28   MMC, Plaintiffs also appear to assert that the MMC referral itself is unconstitutional. *See* Mot. at

7

1    13-14, 21-22. But here too, Olive Hill lacks a sufficient injury to establish jurisdiction over these

2    claims. The MMC referral itself forces nothing on Olive Hill or other employers and requires

3    nothing of them. Olive Hill need not change the wages or benefits it is providing to its employees,

4    and it may choose to attend the mediation sessions and work in good faith with the UFW to

5    mutually agree on the terms of a contract or it may refuse to do so—there is no legal sanction for

6    refusing to participate in MMC.[5]

7         **B.    Plaintiffs' claims are also not prudentially ripe.**

8         The prudential aspect of ripeness also weighs against Plaintiffs' claims. This aspect of the

9    doctrine "concerns the fitness of the issues for judicial decision and the hardship to the parties of

10   withholding court consideration." *Stavrianoudakis*, 108 F.4th at 1139. "A claim is fit for decision

11   if the issues raised are primarily legal, do not require further factual development, and the

12   challenged action is final." *Id.* "In cases against a government agency, relevant considerations

13   include whether the administrative action is a definitive statement of an agency's position;

14   whether the action has a direct and immediate effect on the complaining parties; whether the

15   action has the status of law; and whether the action requires immediate compliance with its

16   terms." *Id.*

17        These factors all cut against Plaintiffs. As just explained, there is no final MMC order in

18   this case and may never be. MMC is a lengthy process, and it has only just started. *See* Avila-

19   Gomez Decl. ¶ 12 (noting that MMC process can take an average of 287 days, and sometimes

20   much longer). And while Plaintiffs at times seem to be challenging the underlying MMC referral,

21   this referral has no "direct and immediate effect" on Olive Hill and does not "require[] immediate

22   compliance with its terms." *Id.*

23        Plaintiffs have also not "show[n] that withholding review would result in direct and

24   immediate hardship and would entail more than possible financial loss." *Stavrianoudakis*, 108

25   F.4th at 1139. This factor involves considering whether the challenged action "requires an

26   immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties

27        _____

28        [5] Plaintiffs' citation to *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), Mot. at 3, does
     not establish an injury either, as that case dealt with the unique harm of being subjected to an
     agency proceeding where the agency's structure violated the separation of powers. *Id.* at 191.

attached to noncompliance." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009). While any eventual final MMC order might require such a significant change, the mere referral to MMC does not. *Cf. Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 944 (9th Cir. 2021) (finding hardship because delaying review would mean the challenged action "could not be reviewed until it was already implemented").

## II.    PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS.

If this Court does consider Plaintiffs' motion now, it should deny it because Plaintiffs have failed to establish entitlement to injunctive relief. They have failed to demonstrate "serious questions" about the validity of the facial challenges to the MMC process, let alone a likelihood of success on the merits. *See Assurance Wireless*, 100 F.4th at 1039 ("failure to show a likelihood of success on the merits precludes injunctive relief").

Plaintiffs' motion for a preliminary injunction focuses on three core arguments: (1) the MMC process unconstitutionally delegates state authority to agricultural labor unions, *see* Mot. at 6-12; (2) compulsory arbitration between an employer and a labor union violates due process in a variety of ways, *see id.* at 13-19; and (3) the MMC process violates the Equal Protection Clause by allowing unions to decide which employers are subject to MMC and by rendering each employer subject to a different set of labor rules, *see id.*at 19-24. None of these theories has merit. Indeed, most have already been roundly rejected by the courts.

### A.    MMC does not impermissibly delegate state authority to private parties.

Plaintiffs complain that the MMC process violates due process by delegating "coercive power" to a private party. *See* Mot. at 6. They claim that MMC gives unions the "authority to force" an "unwilling employer into a coercive regime," with the "relinquishment of ***any*** state discretionary control over the exercise of sovereign compulsion." *Id.* at 9 (emphasis in original). According to Plaintiffs, no standards exist to control when unions may "compel an employer into a forced contract," and the "employer is bound by the union's decision to force it into MMC" because the Board has no role beyond confirming that 90 days have elapsed since the initial request to bargain. *Id.* at 9-10.

As an initial matter, MMC does not constitute a delegation. It is not a one-sided coercive process allowing unions to "force" an employer into MMC, and it does not allow unions to "force" specific contract terms on the employer. *Either* party may request to initiate the MMC process once negotiations have broken down and the parties need expert help to reach an agreement. *See* §1164(a). But the Board determines whether the criteria for MMC are met and refers the parties to MMC. Further, this determination is not "purely ministerial." Mot. at 11 n.10. The Board may hold evidentiary hearings in conducting this assessment. Cal. Code Regs. tit. 8, § 20408(b). And not all parties that request MMC are ordered to engage in the process. *See* Avila-Gomez Decl. ¶ 11.

Nor does the MMC statute give unions the power to coerce or determine the ultimate contractual terms. Where the parties cannot agree on material aspects of a contract, the mediator prepares a report resolving the disputed issues on the basis of the record. § 1164(d); Cal. Code Regs. tit. 8, § 20407(a)(2). Parties may then contest the terms of the order before the Board and, if they disagree with the Board's final decision, in a court. §§ 1164.3, 1164.5.

Plaintiffs identify no cases holding that a private party's opportunity to ask the government to initiate a quasi-legislative action violates due process. In contrast, the Supreme Court has held that requesting to initiate a legal action does not violate due process where the party initiating the process does not determine the ultimate outcome. In *Miller v. Schoene*, for instance, the Court addressed a Virginia statute that allowed property owners to request an entomologist's inspection of local trees to determine whether they were diseased, and, if so, to require the landowner to destroy the trees. 276 U.S. 272, 277-78 (1928). The property owners who requested the inspection did "not determine the action of the state entomologist. They merely request[ed] him to conduct an investigation[,]" and the entomologist ultimately decided whether the trees had to be destroyed. *See id.* at 281. Given this, the property owners' initiation of a legal process did not violate due process. *Id.*; *see also Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 243 n.6 (1984) (upholding constitutionality of Hawaii law allowing tenants to petition for condemnation of landlord's property in order to force sale to tenant, and rejecting claim that "due process prohibits allowing lessees to initiate the taking process").

10

1    Indeed, the California Supreme Court has rejected a similar delegation argument. *Gerawan*,

2    3 Cal.5th at 1141–42. The employer there argued that "the MMC process is unconstitutionally

3    arbitrary because it allows a 'self-interested union to compel the regulation of individual

4    employers of its choosing.'" *Id.* But the Supreme Court recognized that either party could seek

5    MMC and the MMC process begins only if "the Board, not the parties" determines that the

6    statutory prerequisites are met. *Id.* at 1142. It held that "the fact that the MMC process is initiated

7    by a party does not make it arbitrary or irrational." *Id.*

8    Because the Board retains authority over both the initiation of MMC and the terms of any

9    final MMC order, there is no delegation of coercive power that implicates due process concerns.

10   None of the three cases Plaintiffs principally rely on, all predating the Second World War,

11   support their claim. *See Eubank v. City of Richmond*, 226 U.S. 137 (1912); *Washington ex rel.*

12   *Seattle Title Trust Co. v. Roberge*, 278 U.S. 116 (1928); *Carter v. Carter Coal Co.*, 298 U.S. 238

13   (1936).  These cases stand for the limited proposition that administrative decision making cannot

14   be made "subservient to selfish or arbitrary motivations or the whims of local taste." *Young v.*

15   *City of Simi Valley*, 216 F.3d 807, 820 (9th Cir. 2000). But where state law effectively prohibits

16   non-governmental actors from violating due process, there is no concern that decision making

17   will be the product of selfish or arbitrary motivations. *See Tucson Woman's Clinic v. Eden*, 379

18   F.3d 531, 556 (9th Cir. 2004), *abrogated on other grounds by Dobbs v. Jackson Women's Health*

19   *Org.*, 597 U.S. 215 (2022). Plaintiffs' own out-of-circuit authority similarly makes clear that the

20   private non-delegation rules are only implicated where the delegee "acted with little or no

21   guidance." *Rice v. Vill. of Johnstown*, 30 F.4th 584, 590 (6th Cir. 2022).

22   Here, the Legislature has provided substantial guidance for the MMC process, eliminating

23   the risk of any selfish or arbitrary motivations. First, it set clear requirements for the initiation of

24   MMC. § 1164; Cal. Code Regs. tit. 8, § 20400. If MMC is initiated, the mediator—selected by

25   the parties—must provide a reasoned basis in any report resolving differences between the

26   parties. *See* § 1164(b), (d). The mediator must consider a host of non-exhaustive statutory factors,

27   including "[t]he corresponding wages, benefits, and terms and conditions of employment in other

28   collective bargaining agreements covering similar agricultural operations with similar labor

11

1    requirements." § 1164(e)(3).[6] In other words, the statute provides the mediator with more than a

2    "little . . . guidance" to resolve the parties' disputed issues. *See Gerawan*, 3 Cal. 5th at 1145

3    ("These statutory factors . . . minimiz[e] arbitrary or irrational differences between the collective

4    bargaining agreements imposed by the MMC process on similarly situated agricultural

5    employers.").

6         The statute provides further protection from arbitrary decision making, as it requires the

7    Board to vacate any provision of a mediator's report that is, among other faults, "arbitrary and

8    capricious in light of the mediator's findings of fact." § 1164.3(a). It shall also vacate the entire

9    report where it finds misconduct by the mediator. § 1164.3(e). And either party may petition the

10   California Court of Appeal or the California Supreme Court for further review of a final MMC

11   order. § 1164.5. These provisions provide "safeguards adequate to prevent . . . abuse" of any

12   delegated coercive power. *Gerawan*, 3 Cal. 5th at 1150–51.

13       **B.**    **The MMC process does not violate due process.**

14         The bulk of Plaintiffs' complaint, and motion for a preliminary injunction, is the contention

15   that the MMC process impermissibly burdens employers' liberty and property interests. Although

16   this argument takes several forms, none of them are persuasive.

17       **1.**    **Plaintiffs' liberty-of-contract claim has no legal basis.**

18         Plaintiffs mount a substantive due process challenge to the MMC process, arguing that the

19   imposition of a final MMC order intrudes on their constitutional freedom of contract. Mot. at 14.

20   But courts "emphatically refuse to go back to the time when courts used the Due Process Clause

21   to strike down state laws, regulatory of business and industrial conditions, because they may be

22   unwise, improvident, or out of harmony with a particular school of thought." *Ferguson v. Skrupa*,

23   372 U.S. 726, 731–32 (1963) (footnote omitted)). Today, economic regulations like MMC "will

24   not be struck down on substantive due process grounds so long as [they] implement[] a rational

25   means of achieving a legitimate governmental end." *Indep. Training & Apprenticeship Program*

26   *v. California Dep't of Indus. Rels.*, 730 F.3d 1024, 1039 (9th Cir. 2013).

---

27
28       [6] These are not discretionary factors. *See Hess Collection Winery*, 140 Cal. App. 4th at 1607 ("A mediator crafting a collective bargaining agreement *must* apply the criteria set out in regulation 20407 and in section 1164, subdivision (e)." (emphasis in original)).

1    Avoiding this framework, Plaintiffs rely on a trio of *Lochner*-era decisions striking down a

2    Kansas statute addressing labor disputes. *See* Mot. at 14–15. But Plaintiffs' precedent is no longer

3    good law and is inapplicable to begin with. The core holding of *Charles Wolff Packing Co. v.*

4    *Court of Industrial Relations of State of Kansas* (*Wolff I*), 262 U.S. 522 (1923), was directly

5    repudiated in *Lincoln Federal Labor Union No. 19129, A.F. of L. v. Northwestern Iron & Metal*

6    *Co.*, where the Court explained that *Wolff I*:

7         construed the due process clause as forbidding legislation to fix hours and wages, or
          to fix prices of products [and] relied on a distinction between businesses according to
8         whether they were or were not 'clothed with a public interest.' This latter distinction
          was rejected in *Nebbia v. People of State of New York*, 291 U.S. 502. That the due
9         process clause does not ban legislative power to fix prices, wages and hours as was
          assumed in the *Wolff* case, was settled as to price fixing in the *Nebbia* and *Olsen*
10        cases. That wages and hours can be fixed by law is no longer doubted since *West*
          *Coast Hotel Co. v. Parrish*, 300 U.S. 379; *United States v. Darby*, 312 U.S. 100, 125;
11        *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 187.

12    335 U.S. 525, 535–36 (1949) (citation omitted).

13    Moreover, the *Wolff Packing* trilogy expressly relied on *Adkins v. Children's Hospital*, 261

14    U.S. 525 (1923), which was overruled decades ago. *See West Coast Hotel Co. v. Parrish*, 300

15    U.S. 379, 400 (1937). *Wolff I* relied on *Adkins* for its fundamental premise that contractual liberty

16    could only be regulated in "exceptional circumstances," such as where a business implicates the

17    public interest, *see* 262 U.S. at 534—the very principle the Court rejected in *West Coast Hotel*,

18    300 U.S. at 391, 397–400.

19    For that reason, court after court has refused to rely on these cases. *See, e.g.*, *Mount St.*

20    *Mary's Hosp. of Niagara Falls v. Catherwood*, 26 N.Y.2d 493, 500 (1970) ("The underpinnings

21    for the view [expressed in the *Wolff* trilogy] concerning industries affected with a public interest

22    have, of course, since then been severely, if not fatally, weakened."); *Country-Wide Ins. Co. v.*

23    *Harnett*, 426 F. Supp. 1030, 1033 (S.D.N.Y.) (explaining "[t]he Court has steadily rejected the

24    substantive due process approach exemplified by *Wolff* and *Dorchy*"), *aff'd*, 431 U.S. 934 (1977);

25    *Burstein v. Nonte*, 688 F. Supp. 3d 314, 322 (E.D. Va. 2023) (noting, where plaintiff relied on

26    *Wolff*, that "[t]o the extent that the debtor is relying on substantive due process for his

27    constitutional right-to-contract claim, more recent Supreme Court cases have largely foreclosed

28    that argument" (citing *West Coast Hotel Co.*, 300 U.S. at 392)), *aff'd*, No. 23-2002, 2024 WL

13

1    4764261 (4th Cir. Nov. 13, 2024). Indeed, when an employer raised the same argument before the

2    California Supreme Court less than a decade ago, that court rejected Plaintiffs' precedent as based

3    on a "restrictive view of the police power [that] was completely repudiated by the high court a

4    decade later." *Gerawan*, 3 Cal. 5th at 1139.[7]

5          Plaintiffs nonetheless claim the rejection of these cases has not been sufficiently explicit,

6    and so this Court must follow them. But MMC is fundamentally different from the statute

7    addressed in the *Wolff* trilogy, and so these cases—even assuming they have some remaining

8    precedential force—do not "directly control[]." *Rodriguez de Quijas v. Shearson/Am. Express,*

9    *Inc.*, 490 U.S. 477, 484 (1989)). The *Wolff* trilogy rested on two key features of Kansas's law that

10   don't apply to MMC. First, the Court relied on the fact that Kansas's law required employers to

11   continue operating their businesses. As the Court explained in *Wolff II*, "[t]he system of

12   compulsory arbitration which the act establishes . . . constrain[s] [employers], not merely to

13   respect the terms *if they continue* the business, but will constrain them *to continue* the business on

14   those terms." *Charles Wolff Packing Co. v. Ct. of Indus. Rels. of Kansas* (*Wolff II*), 267 U.S. 552,

15   569 (1925) (emphasis added); *see id.* at 568 (reiterating and reaffirming *Wolff I*'s conclusion that,

16   because "the business in question" did not sufficiently implicate the public interest, the state

17   could not constitutionally "compel the owner and employees *to continue*" that business). And on

18   the employee's side, "[a] laborer dissatisfied with his wages is permitted to quit, but he may not

19   agree with his fellows to quit or combine with others to induce them to quit." *Wolff I*, 262 U.S. at

20   534. MMC requires nothing of the sort of either employers or employees, and so these cases

21   provide no basis for a facial challenge. *See Washington State Grange v. Washington State*

22   *Republican Party*, 552 U.S. 442, 449–50 (2008) ("In determining whether a law is facially

23   invalid, we must be careful not to go beyond the statute's facial requirements and speculate about

24   hypothetical or imaginary cases.").

25

26

27          [7] While *Dorchy v. Kansas*, 264 U.S. 286 (1924), is still cited today, it is cited for its
     severability analysis in particular. *See, e.g.*, *Seila Law LLC*, 591 U.S. at 234 (quoting *Dorchy*, 264
28   U.S. at 289–90).

14

**2.    Olive Hill and other employers do not have a free-standing right to a reasonable return on their business.**

Invoking cases related to public utility regulation and rent control ordinances, Plaintiffs assert that agricultural employers have a freestanding constitutional right to a reasonable return on their business. Mot. at 15–17. But Plaintiffs don't identify or rely on any authority in the labor regulation context, *see id.*, and the Board is aware of none. Instead, Plaintiffs attempt to shoehorn their claim into existing authority in the public utility ratemaking context, arguing the constitutional limitations in this unrelated context "equally apply to the terms imposed under a MMC 'contract.'" *Id.* at 16. Yet Plaintiffs' inapposite citations to a statutory interpretation case, *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 593 (1944), and a Takings Clause challenge to public utility regulation, *Duquesne Light Co. v. Barasch*, 488 U.S. 299 (1989), don't suggest any application to the agricultural labor relations context, and Plaintiffs don't explain why, in their view, a CBA "may be likened" to these contexts. Mot. at 16. Put simply, Olive Hill does not identify any authority establishing its claim of a constitutional right to a "reasonable return" on its business.

Indeed, all the cases Plaintiffs cite relate to price control, not labor relations. *Birkenfeld v. City of Berkeley*, for example, considered a "regulation of rents." 17 Cal. 3d 129, 159 (1976). So too for the other cases cited. *See Richardson v. City & Cnty. of Honolulu*, 759 F. Supp. 1477 (D. Haw. 1991) (constitutionality of rent-control ordinance); *Cromwell Assocs. v. Mayor & Council of City of Newark*, 511 A.2d 1273 (N.J. Super. Ct. Law Div. 1985) (same); *Bayscene Resident Negotiators v. Bayscene Mobilehome Park*, 15 Cal. App. 4th 119 (1993) (constitutionality of mandatory binding arbitration in rent-control context).

In any event, Plaintiffs' lead case—*Birkenfeld*—applied only rational basis. The California Supreme Court there concluded that the means by which the City of Berkeley proposed to limit the upper most rent price was "unconstitutionally confiscatory" because it lowered rents "more than could reasonably be considered to be required for the measure's stated purpose." *Id.* at 165. The Court found that the regulation would not "permit those who administer it to avoid confiscatory results in its application to the complaining parties." *Id.* at 165.

1   Putting aside the fact that *Birkenfeld* interpreted a municipal rent control ordinance,

2   Plaintiffs do not—and cannot—show that MMC by itself works some confiscatory harm not

3   reasonably related to the Legislature's purpose in enacting the statutory regime. At most, MMC

4   will result in a CBA reflecting the mediator's analysis of prevailing wage conditions in relevant

5   analogous markets, and of "[t]he financial condition of the employer and its ability to meet the

6   costs of the contract in those instances where the employer claims an inability to meet the union's

7   wage and benefit demands." § 1164(e)(2). There is nothing inherently confiscatory about this, and

8   in fact there is no reason to believe that any MMC contract imposed would be "confiscatory."[8]

9   Plaintiffs have not established any likelihood of succeeding on the merits of what appears to be an

10  entirely novel constitutional theory. *See S. California Healthcare Sys., Inc. v. City of Culver City*,

11  2022 WL 1394751, at *9 (C.D. Cal. Jan. 19, 2022) (rejecting attempt to import this theory, which

12  "relies on inapposite state insurance and rent control cases," in challenge to wage regulation),

13  *aff'd*, No. 22-55166, 2023 WL 234787 (9th Cir. Jan. 18, 2023).

14        **3.    The MMC mediator's role does not violate due process.**

15  Plaintiffs claim the MMC mediator's dual role as both a neutral facilitator and an arbitrator

16  (if the parties cannot agree on a contract) amounts to a

17  constitutional violation because, Plaintiffs hypothesize, the mediator will reach a decision based

18  on confidential, off-the-record settlement discussions with the parties. *See* Mot. at 17–19. That is

19  not the case.

20        The MMC regulations provide that "[a]ll communications taking place off the record . . .

21  shall not be the basis for any findings and conclusions in the mediator's report," and that "[t]he

22  mediator shall cite evidence in the record that supports the mediator's findings and conclusions."

23  Cal. Code Regs. tit. 8, § 20407(a)(2); *see also* § 1164(d) ("The mediator's determination shall be

24  supported by the record."). Moreover, "the regulations allow a party to file with the Board

25  'declarations that describe pertinent events that took place off the record' in case of any alleged

26        [8] Plaintiffs' claim that employers must have some "exit mechanism" from a final MMC
     order, Mot. at 15–16, rests on this same faulty assumption. And as a practical matter, employers
27   *do* have an exit from MMC orders: they may reach an agreement with a union. That Olive Hill
     may not like a final MMC order or negotiating with a union does not make the final MMC order
28   confiscatory.

1    misconduct or improper factfinding." *Gerawan*, 3 Cal. 5th at 1152 (quoting Cal. Code Regs. tit. 8,

2    § 20408(a)). And finally, it is not clear that the regulations even provide for the *ex parte* off-the-

3    record proceedings Plaintiffs are concerned about. *See* Cal. Code Regs. tit. 8, § 20407 (outlining

4    mediation process without providing for *ex parte* mediation proceedings).[9] Again, facial

5    challenges are limited to the text of the statute, not how it may be applied in a particular case. *See,*

6    *e.g.*, *Calvary Chapel Bible Fellowship v. Cnty. of Riverside*, 948 F.3d 1172, 1177 (9th Cir. 2020).

7        Indeed, Plaintiffs' claim appears to be that a mediator may engage in *ex parte* off-the-

8    record communications with a party, reach a particular decision based on those communications,

9    and then manufacture the record to provide on-the-record support for its ultimate conclusion, so

10   that its report would withstand Board and judicial review. *See* Mot. at 18. But as noted

11   previously, facial challenges many not speculate about hypothetical or imaginary cases."

12   *Washington State Grange*, 552 U.S. at 449–50. That is doubly true in light of the "presumption of

13   honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47

14   (1975). Plaintiffs' facial claim thus fails as a matter of law.

15           **4.    MMC's cost-sharing provision satisfies due process.**

16       Plaintiffs claim that MMC's "imposed cost-shifting" provision is invalid on its face. Mot. at

17   19. But their one (state court) precedent does not support this claim. That case held that a cost-

18   sharing provision applicable where a teacher sought a hearing regarding their suspension or

19   dismissal violated due process because it "deter[red] teachers from exercising their due process

20   right to a hearing." *Cal. Tchrs. Ass'n v. California*, 20 Cal. 4th 327, 357 (1999); *see also, e.g.*,

21   *Boddie v. Connecticut*, 401 U.S. 371, 372, 380–83 (1971) (holding that requiring "payment of

22   court fees and costs for service of process" to bring divorce actions violated due process as

23   applied to indigent plaintiffs). But this case doesn't apply here, as Olive Hill desires to avoid

24   participating in MMC at all. Putting that aside, though, Plaintiffs don't attempt to relate the

25   plaintiff-specific procedural due process balancing analysis in *California Teachers Association* to

26   the balance of interests here. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022)

27           [9] Nor do Plaintiffs show that there were any such communications so far in Olive Hill's
28   MMC proceeding, meaning its challenge here is not justiciable as a matter of standing and
     ripeness.

1    ("Due process is a flexible concept that varies with the particular situation."). Nor do Plaintiffs

2    attempt to explain why a challenge to the cost-sharing provision justifies enjoining the entire

3    MMC statute. *See Rhoades v. Reinke*, 671 F.3d 856, 860 (9th Cir. 2011) (per curiam) ("Any

4    injunctive relief must be tailored to the specific harm"); *see also* § 1164.13 (MMC statute's

5    severability clause).

6    **C.    The MMC process does not violate equal protection.**

7    Plaintiffs' dual equal protection claims—challenging both referral to MMC and the final

8    MMC order—fail as a matter of law. Applying rational basis review, the California Supreme

9    Court squarely rejected both claims in *Gerawan*, 3 Cal. 5th at 1140–46.

10    First, Plaintiffs' challenge to the MMC referral is subject to rational basis review. *See*

11    *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015). This standard is

12    highly deferential; the targeted "legislation is presumed to be valid and will be sustained if the

13    classification drawn by the statute is rationally related to a legitimate state interest." *Erotic Serv.*

14    *Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018), as amended,

15    881 F.3d 792 (9th Cir. 2018). Here, there is no question there is a plausible policy reason for the

16    MMC statute. MMC is intended to provide for "a more effective collective bargaining process

17    between agricultural employers and agricultural employees, and thereby more fully attain the

18    purposes of the [ALRA], ameliorate the working conditions and economic standing of

19    agricultural employees, create stability in the agricultural labor force, and promote California's

20    economic well-being by ensuring stability in its most vital industry." 2002 Cal. Legis. Serv. Ch.

21    1145 (S.B. 1156). And as the Supreme Court has explained, "[i]n the area of economics and

22    social welfare, a State does not violate the Equal Protection Clause merely because the

23    classifications made by its laws are imperfect." *Dandridge v. Williams*, 397 U.S. 471, 485 (1970).

24    Following this guidance, the Ninth Circuit has repeatedly explained that "[a] classification does

25    not fail rational-basis review because it is not made with mathematical nicety or because in

26    practice it results in some inequality." *United States v. Navarro*, 800 F.3d 1104, 1114 (9th Cir.

27    2015).

28

1    Further, the relationship between the employer classification and the legislative goal in

2    establishing the MMC process is not attenuated. As the California Supreme Court explained, the

3    legislature "reasonably could have concluded" that the MMC process would "facilitate the

4    adoption of first contracts," and that this, in turn, would "further[] the goal of ensuring stability in

5    the agricultural industry." *See Gerawan*, 3 Cal. 5th at 1141 (cleaned up). This goal is achieved by

6    applying the MMC statute only to agricultural employers who have failed to reach a first CBA,

7    and then "empowering mediators to make individualized determinations regarding the terms of

8    particular collective bargaining agreements." *Id.* at 1144.

9    Again, Plaintiffs misrepresent the MMC process. The MMC statute doesn't give unions

10    "*carte blanche*" to "pick and choose" which employers to "force[]" into MMC. Mot. at 21. Either

11    the union representative *or* the employer may request an MMC referral, *see Gerawan*, 3 Cal. 5th

12    at 1142, and the other side may then contest this request, including with evidentiary submissions.

13    Cal. Code Regs. tit. 8, § 20401(a). The Board then evaluates the request—including with an

14    evidentiary hearing, where necessary—and refers the parties to MMC only where it determines

15    the prerequisites have been met. § 1164(b); Cal. Code Regs. tit. 8, § 20402. "In light of these

16    criteria and the Board's role in determining whether they are met, the fact that the MMC process

17    is initiated by a party does not make it arbitrary or irrational." *Gerawan*, 3 Cal. 5th at 1142.

18    Moreover, it is entirely rational for the Legislature to determine bargaining parties are best

19    positioned to alert the Board where MMC's requirements are met and MMC could be helpful.

20    Second, final MMC orders do not arbitrarily subject individual employers to "different,

21    quasi-legislative regulation." Mot. at 22. Such class-of-one claims require "the existence of a

22    clear standard against which departures, even for a single plaintiff, could be readily assessed."

23    *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 602 (2008). But MMC orders are crafted based on

24    each individual employers' circumstances, as Plaintiffs acknowledge. *See*, *e.g.*, Compl. ¶ 185

25    (mediators will make "individualized determinations" because "no two employers are alike").

26    This makes sense as "reasonable wages and benefits will necessarily vary across company size,

27    crop, and geographic region." *Gerawan*, 3 Cal. 5th at 1144; *see also Ft. Smith Light & Traction

28    Co. v. Bd. of Improvement of Paving Dist. No. 16*, 274 U.S. 387, 391–92 (1927) ("[t]he

19

1   Fourteenth Amendment does not require the uniform application of legislation to objects that are

2   different, where those differences may be made the rational basis of legislative discrimination.").

3   And the same criteria are used to determine the MMC terms for each employer, *see Hess*

4   *Collection Winery*, 140 Cal. App. 4th at 1607 ("A mediator crafting a collective bargaining

5   agreement *must* apply the criteria set out in regulation 20407 and in section 1164, subdivision

6   (e)." (emphasis in original)), so the tailored MMC terms are not arbitrarily determined. *See*

7   *Gerawan*, 3 Cal.5th at 1145 ("These statutory factors . . . minimize[e] arbitrary or irrational

8   differences between the collective bargaining agreements imposed by the MMC process on

9   similarly situated agricultural employers."). This makes MMC orders the type of state action that,

10  "by [its] nature involve[s] discretionary decisionmaking based on a vast array of subjective,

11  individualized assessments" such that class-of-one claims cannot apply. *Engquist*, 553 U.S. at

12  603.

13      In any event, Olive Hill can't establish the core elements of this type of claim—that it has

14  been "[1] intentionally [2] treated differently from others similarly situated and that [3] there is no

15  rational basis for the difference in treatment." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110,

16  1122–23 (9th Cir. 2022). First, it is entirely unclear whether Olive Hill (or any employer subject

17  to MMC) has been "treated differently" by a final MMC order because there is no final MMC

18  order here. Second, it is not clear how Olive Hill is similarly situated with agricultural employers

19  given that, as it acknowledges, "no two employers are alike." Compl. ¶ 185.

20      Third, the statute sets out the reasons—that is, rational bases—contracts may differ among

21  employers. § 1164(e). Plaintiffs don't appear to argue these factors—such as, for example, "[t]he

22  financial condition of the employer," § 1164(e)(2)—constitute irrational reasons for treating

23  different employers differently. Instead, Plaintiffs fear mediators could simply disregard these

24  considerations because the statute says the mediator "may" consider these factors. But a

25  California court has held this "may" to be mandatory. *See Hess Collection Winery*, 140 Cal. App.

26  4th at 1607 ("[I]n this context, . . . 'may' means 'must.' A mediator crafting a collective

27  bargaining agreement *must* apply the criteria set out in regulation 20407 and in section 1164,

28

subdivision (e)." (emphasis in original)).[10] In any event, even if a mediator disregard this requirement and enacts their own policy preferences instead of following the statute and the Board and reviewing court nonetheless uphold the final MMC order, as Plaintiffs fear, Mot. at 22–23, that is a basis for an as-applied challenge—not the facial challenge Plaintiffs bring here.

### III.    PLAINTIFFS HAVE NOT DEMONSTRATED ANY IRREPARABLE HARM.

Plaintiffs' single paragraph addressing irreparable harm, *see* Mot. at 24, doesn't show entitlement to the extraordinary remedy of preliminary injunctive relief. Olive Hill argues that it is suffering irreparable harm because it is subject to an unconstitutional scheme and because it is accordingly accruing certain (undefined, unexplained, and unproven) "compliance costs." *id.*

Putting aside that Olive Hill has not provided any evidence supporting the purported compliance costs it is currently incurring, Plaintiffs' entire theory of harm is circular. Because the only harm Plaintiffs identify flows from the assumption that MMC is unconstitutional, *see id.*, Plaintiffs have no independent basis for establishing entitlement to preliminary injunctive relief if the Court concludes—as it should—that there is no likelihood of success on the merits. Since MMC clearly *is* constitutional, Plaintiffs have not identified *any* irreparable harm they may face while the Court considers the merits. That is an independent reason to deny this motion. *See, e.g.*, *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1282 (N.D. Cal. 2014) ("As Plaintiffs base their entire irreparable harm argument on irreparable harm being presumed if they are likely to succeed on the merits, Plaintiffs fail to demonstrate that enforcement of the Sunnyvale law will cause them irreparable harm."), *aff'd*, 779 F.3d 991 (9th Cir. 2015).

### IV.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST STRONGLY DISFAVOR A PRELIMINARY INJUNCTION.

Where the State is a defendant, the final two factors of the preliminary injunction standard merge. *Drakes Bay Oyster Co.*, 747 F.3d at 1092. And "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Here, the MMC statute serves critical public purposes: the promotion of labor peace and the security of

---

[10] The California Supreme Court acknowledged this holding in *Gerawan* but did not opine on the question. 3 Cal. 5th at 1145.

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (1:25-cv-00577-JLT-BAM)

1    employee collective bargaining rights in the agricultural industry. An injunction prohibiting the

2    Board from effectuating a law with that kind of salutary purpose would impose significant public

3    harm. And Plaintiffs haven't offered a shred of evidence to support any claim of irreparable

4    injury. All the harms associated with a preliminary injunction will fall on the public if the

5    injunction is granted. In contrast, Plaintiffs have failed to establish that they will suffer any harm

6    if the injunction is denied. For this reason, the balance of the equities strongly disfavors injunctive

7    relief.

8                                 **CONCLUSION**

9         Plaintiffs' efforts to relitigate well-settled constitutional principles should be rejected.

10   These claims are not ripe, and, in any event, Plaintiffs' arguments lack any merit. Given the

11   significant harm to the public if an injunction issues in these circumstances, the Court should

12   deny Plaintiffs' motion.

13

14

15   Dated: May 15, 2025                 Respectfully submitted,

16                                 ROB BONTA
Attorney General of California

17                                 MARK R. BECKINGTON
Supervising Deputy Attorney General

18                                 SEBASTIAN BRADY
Deputy Attorney General

19

20

21                                 */s/ Kristi A. Hughes*
KRISTI A. HUGHES

22                                 Deputy Attorney General
*Attorneys for Defendants*

23   SA2025301850

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:    ***Western Growers Association, et al. v. Agricultural Labor Relations Board, et al.***

Case No.      **1:25-cv-00577-JLT-BAM**

I hereby certify that on <u>May 15, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION (ECF No. 13)**

- **DECLARATION OF SANTIAGO AVILA-GOMEZ IN SUPPORT OF OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>May 15, 2025</u>, at San Francisco, California.

|                          |                          |
|--------------------------|--------------------------|
| B. Chung                 |                          |
| Declarant                | Signature                |

SA2025301850
44628435.docx